IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

05 JAN -3  PM 1: 05

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WEYERHAEUSER COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 1 : 0 5 CV 0 0 0 3

Robert Holmes Bell
Chief, U.S. District Judge

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as

follows:

### NATURE OF ACTION

1.    This is a civil action brought pursuant to Sections 107(a) and 113(g)(2) of the

Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as

amended, 42 U.S.C. §§ 9607(a), 9613(g)(2), for recovery of environmental response costs

incurred by the United States in connection with a landfill and paper mill at the Allied

Paper/Portage Creek/Kalamazoo River Superfund Site in Kalamazoo and Portage Counties,

Michigan (the "Site").  In addition, the United States seeks a judgment, pursuant to CERCLA

Section 113(g)(2), 42 U.S.C. § 9613(g)(2), declaring that the Defendant is liable for any further

response costs that the United States may incur as a result of releases or threatened releases of

hazardous substances at the landfill and paper mill.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 42

U.S.C. §§ 9607 and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3.      Venue is proper in the Western District of Michigan pursuant to 42 U.S.C. §

9613(b) and 28 U.S.C. § 1391(b)(2) and (c), because the claim arose, and the threatened or actual

releases of hazardous substances occurred, in that district.

## THE DEFENDANT

4.      Weyerhaeuser Company ("Weyerhaeuser") is a corporation organized under the

laws of the State of Washington with its principal place of business in Seattle, Washington.

## GENERAL ALLEGATIONS

5.      The Site is located in Allegan and Kalamazoo Counties, Michigan.

6.      The Site consists of (1) a three-mile segment of Portage Creek; (2) an 80-mile

segment of the Kalamazoo River, including the adjacent flood plains and wetlands; (3) six paper

mill properties; and (4) five disposal areas.

7.      The Site is contaminated with hundreds of thousands of pounds of polychlorinated

biphenyls ("PCBs"). The PCB contamination primarily resulted from the operations of paper

mills along the Kalamazoo River.

8.      Between 1954 and the early 1970s, several paper mills along the Kalamazoo River

manufactured paper by de-inking carbonless copy paper, which was coated with PCB-laden dyes.

During the de-inking process, PCBs were released into the mills' waste streams.

9.      From at least the 1950s to the 1960s, the paper mill companies discharged PCB-

contaminated paper waste directly into the Kalamazoo River. Eventually, the paper mills dried

the contaminated wastes and deposited them in disposal areas.

10.     From approximately 1886 to 1970, Weyerhaeuser or its predecessors-in-interest owned and operated a paper mill (the "Mill") and landfill (the "Landfill") at the Site.

11.     The 34-acre Mill is located in Plainwell, Michigan, along the Kalamazoo River. The Mill was originally constructed by the Michigan Paper Company in 1886. In 1956, the Michigan Paper Company was dissolved and became the Michigan Division of the Hamilton Paper Company. In 1964, Hamilton Paper Company merged into Weyerhaeuser.

12.     Beginning in the mid-1950s and continuing until at least the 1960s, thousands of pounds of carbonless copy paper were de-inked daily at the Mill. As a result of the de-inking operations, PCBs were released into the Mill's waste stream. Even after de-inking operations were discontinued, PCBs continued to be released into the Mill's waste stream through the process of recycling PCB-contaminated paper. PCB-contaminated paper waste was disposed of in the Landfill among other places.

13.     The Landfill is a 6.5-acre disposal area which was created by Weyerhaeuser and its predecessors-in-interest.

14.     EPA listed the Site on the National Priorities List in 1990, pursuant to 40 C.F.R. Part 300, Appendix B, and temporarily designated the State of Michigan as the enforcement lead. The Michigan Department of Environmental Quality ("MDEQ") divided the Site into several operable units ("OUs"). The Landfill is considered part of Operable Unit #4 ("OU4").

15.     OU4 includes the Landfill and any groundwater contamination and leachate generated from it; the woodland area immediately south/southeast of the Landfill; the wetlands that border the Landfill to the north and northwest; a portion of the gravel operation property that

borders the Landfill to the west; and a portion of the former powerhouse channel of the Plainwell Dam on the Kalamazoo River.

16.    In 1997, pursuant to an agreement with MDEQ, several potentially responsible parties ("PRPs") at the Site, not including Weyerhaeuser, conducted a Remedial Investigation and Feasibility Study ("RI/FS") to characterize the nature and extent of contamination and the options for remediating OU4. The RI revealed the presence of thousands of pounds of PCBs at OU4 which posed a risk to human health and the environment.

17.    In 2001, MDEQ issued a Record of Decision ("ROD") which set forth the selected remedy for soil and groundwater contamination at OU4. The ROD requires, among other things, the construction of a landfill cap and, if deemed necessary by EPA, a leachate collection system to prevent the migration of PCB-contaminated leachate to other areas of the Site.

18.    In 1994, MDEQ began investigating the contamination at the Mill. Preliminary investigations revealed elevated levels of PCBs in the Mill's wastewater treatment system, dewatering lagoons, warehouse construction sites, and stormwater conveyances. An RI/FS has not been completed for the Mill.

CERCLA LIABILITY

19.    The Mill, including its surface and sub-surface soils and water, is a "facility," within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a).

20.    OU4, including its surface and sub-surface soils and water, is a "facility," within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a).

-4-

21.     Hazardous substances were "disposed of" at the Mill, within the meaning of Sections 101(14), 101(29) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(29) and 9607(a).

22.     Hazardous substances were "disposed of" at OU4, within the meaning of Sections 101(14), 101(29) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(29) and 9607(a).

23.     There have been and continue to be "releases" or "threatened releases" of hazardous substances into the environment at and from the Mill, within the meaning of Sections 101(8), 101(14), 101(22), 104(a), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(8), 9601(14), 9601(22), 9604(a), and 9607(a).

24.     There have been and continue to be "releases" or "threatened releases" of hazardous substances into the environment at and from OU4, within the meaning of Sections 101(8), 101(14), 101(22), 104(a), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(8), 9601(14), 9601(22), 9604(a), and 9607(a).

25.     Defendant Weyerhaeuser is a "person," within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

26.     With respect to both the Mill and OU4, Defendant Weyerhaeuser is a "person who at the time of disposal of any hazardous substance owned or operated [the] facility at which such hazardous substances were disposed of" within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

27.     Defendant Weyerhaeuser is the corporate successor-in-interest to the CERCLA liability of Hamilton Paper through the merger that occurred in 1964.

28.     Defendant Weyerhaeuser is the corporate successor-in-interest to the CERCLA

-5-

liability of the Michigan Paper Company through the dissolution and subsequent merger that occurred in 1956 and 1964.

COUNT I

29.    The allegations of the foregoing paragraphs are incorporated herein by reference.

30.    The United States has incurred and will continue to incur response costs, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), and authorized by Section 104 of CERCLA, 42 U.S.C. § 9604, as a result of the release or threatened release of hazardous substances at the Mill and OU4.

31.    The response costs were incurred and will be incurred by the United States in a manner not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

32.    Defendant Weyerhaeuser is liable for response costs incurred and to be incurred by the United States in connection with the Mill, pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

33.    Defendant Weyerhaeuser is liable for response costs incurred and to be incurred by the United States in connection with OU4, pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

COUNT II

34.    The allegations of the foregoing paragraphs are incorporated herein by reference.

35.    The United States is entitled to a declaratory judgment on liability for response costs at the Mill, which will be binding on any subsequent action to recover further response costs or damages, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

36.    The United States is entitled to a declaratory judgment on liability for response costs at OU4, which will be binding on any subsequent action to recover further response costs or damages, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

**WHEREFORE**, the United States requests judgment as follows:

A.    Judgment against the Defendant Weyerhaeuser in the total amount of all response costs incurred by the United States with respect to the Mill and OU4, including pre-judgment interest;

B.    A declaratory judgment establishing Defendant Weyerhaeuser's liability that will be binding on any subsequent action or actions to recover further response costs relating to the Mill and OU4; and

C.    Such other relief as the Court deems just and proper.

Respectfully submitted,


12/13/04          _Tom Sansonetti_
                  THOMAS L. SANSONETTI
                  Assistant Attorney General
                  U.S. Department of Justice
                  Environment & Natural Resources
                   Division


Dec 27, 2004      _Renita Ford_
                  RENITA Y. FORD
                  Trial Attorney
                  Environmental Enforcement Section
                  Environment & Natural Resources
                   Division

-7-

U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 305-0232

MARGARET M. CHIARA
United States Attorney
Western District of Michigan

12/30/04

JENNIFER L. MCMANUS
Assistant U.S. Attorney
Office of the United States Attorney
Western District of Michigan
5th Floor, The Law Building
330 Iona Ave.
Grand Rapids, MI 49503

Of Counsel:
EILEEN FUREY
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd.  C-14J
Chicago, IL 60604